Okay, our first case is 24-9548 Energy West Mining v. Schilpp and Mr. Mattingly, the appellant, you may proceed. May it please the court, my name is William Mattingly and I hope to save three minutes for rebuttal, but we'll see how I do. Admittedly, this is a very unusual case to be presenting to the court. We're back a second time. I think we're back a second time in part because there was some confusion over the published decision, which I thought was very clear, which the agency did not think was as clear. I thought that the published decision was very straightforward, that this court felt the medical opinion by Dr. Tomaszewski explained there was no clinical pneumoconiosis and there was no legal pneumoconiosis. He found other diseases and was quite expressly specific and precise in explaining why he believed those other diseases were not related to coal dust exposure. This court agreed that the first administrative law judge simply failed to consider the deposition where Dr. Tomaszewski further explained his opinion, sent it back to the benefits review board, sent it back with the board being advised it was to their discretion whether it needed to be remanded back to an administrative law judge to resolve the question. The board took more time than I think they should have, eventually sent it back. There was a retirement among the administrative law judges. It was eventually reassigned. New judge took the case. He wrote a multi-paged decision, gave three reasons after he looked at the medical information. None of those three reasons make sense. The first reason, Dr. Tomaszewski Mr. Manley, before you get into those, and I'll ask the same question of your adversary, do the first two rationales matter since the BIA skirted those two rationales and only relied on the ALJ's third rationale? The standard review of this court allows you to look at the benefits review board's decision and or the administrative law judge's decision. So it's always my, maybe it's an overly protective position that I need to address the administrative law judge's decision, but you're absolutely right. The board filtered it down, dropped a footnote and said we found one reason. We're not going to look at the other reasons. Go away. Which always irritates me because I would like to know why I'm wrong on the other reasons if I am or if the board agrees with me because I think in this case they would have agreed with me. And I always wonder if that's why that footnotes dropped because the first reason, Dr. Tomaszewski didn't cite any medical treatises simply makes no sense. There's no requirement that an expert witness cite a medical treatment based on his experience and expertise for every point he makes. And when you look through his deposition, he explains what he found, the pathologic presentation, and then said I'm not quite sure, very honest, I'm not quite sure what caused this. Here are several options, but I am certain of this. It wasn't coal mine dust. And why am I certain of this? Because the presentation does not have black pigment, which is the key. There had to be some cause and effect between the changes and black pigmentation showing not only exposure but a reaction of the lung tissue. So his explanation was quite, I think, convincing. And the first two reasons that ALJ Swank gave, he didn't cite any medical treatises, so therefore it was conclusory. And that he said it was unknown simply just don't stand up to be criticized. But medical literature, my understanding is he didn't say you have to cite medical literature or we will disregard everything you said, just noted that there wasn't any cited, which that goes to the weight, doesn't it, in other words? It does accept the way he did it, Judge Phillips. He said it was conclusory. And as I read this Court's decision, you concluded the opinion from Dr. Tomaszewski was not conclusory. He explained why he found as he did. And for Judge Swank to say it's conclusory because he didn't cite medical treatises flies in the face of that. So that was one of the reasons that his opinion, Judge Swank's opinion, simply can't be affirmed. I understand the point. Was it a credibility determination? I don't think it was a credibility determination because he didn't explain it. He just said it was conclusory. And quite frankly, I don't know what kind of medical treatises he would have wanted Dr. Tomaszewski to cite. Dr. Tomaszewski did refer back to the 1979 Archives of Pathology and Laboratory Medicine article to establish the existence of clinical pneumoconiosis, but then he moved on to the other diseases. And interestingly enough, the University of Utah Pathology report and the reviewer report that was from the Mayo Clinic paralleled with Dr. Tomaszewski's diagnoses very well. They all agreed they saw nothing related to coal dust exposure. It was primarily the constrictive bronchiolitis that was present. Mr. Mattingly, the rationale that there's no particles, there's no coal, what is it, micronodules or coal macules, that also coincides with the regulatory definition of clinical pneumoconiosis, correct? It doesn't. And here's why I have that opinion. When you look at the regulatory definition, it requires that there be a fibrotic reaction. In addition to the presence.  So it was half of the definition. Yes. Of clinical pneumoconiosis. It was a component. It didn't fulfill the definition. And so the ALJ and the board say that, well, there is, you would agree, would you not, that there can be legal pneumoconiosis without clinical pneumoconiosis. Absolutely. And so if the rationale for rebutting the presumption that the exposure to coal mining dust, or that the, is that the lung function, the impairment of lung function, pulmonary function, arose out of coal mine employment, was predicated on part of the definition of clinical pneumoconiosis, and the ALJ says, well, that can't logically be a rebuttal of legal pneumoconiosis, because that is an integral part of the definition of clinical pneumoconiosis. What is the fallacy in that logic? It seems quite logical on its face, doesn't it? That's not what Dr. Tomaszewski explained. Dr. Tomaszewski explained there's no clinical pneumoconiosis because there's no macular or nodular disease. There's no contrary evidence. That is supported by the x-rays and the CT scans. He then explained we have these two other things. The bronchiolitis was not from coal dust exposure, because when coal dust affects the airways, it causes an entirely different disease process. As he explained, you have macular disease caused in the small airways from coal dust exposure. That's not constricted bronchiolitis. It's an entirely different presentation on the bronchioles. And then the interstitial fibrosis was an infectious process that had nothing to do with coal dust exposure. And he explained when he looked at the biopsy slides, the coal dust was not in the lung parenchyma, the spongy part of the lung, but it was primarily in the pleura. Think of the lung as an orange. The pleura would be the white underneath the skin part of the orange. And when the lung functions, it gets rid of foreign bodies and moves it to the pleura. That's what you expect. That's not a disease process. That's a marker of exposure. That was the words he used. I went back and reread the deposition. And even with 20-20 hindsight now, I don't know that I would have asked him any other questions to have him explain why he did not find legal pneumoconiosis in this case. Because even in his report, he was clear early on that it was not legal pneumoconiosis. Because after he explained that he found constricted bronchiolitis interstitial fibrosis and that the cause was multifactorial, it was not within a reasonable degree of medical certainty the result of coal workers' pneumoconiosis, mineral dust-related small airways disease, or diffuse interstitial fibrosis due to coal dust exposure. That covers the definitions of clinical pneumoconiosis and legal pneumoconiosis. I think those last two expressions that he had explain why this wasn't another chronic dust-induced lung disease. And that's what legal pneumoconiosis is. Are you saying that no reasonable adjudicator could have rejected Tomaszewski's testimony? Or are you saying this adjudicator failed to adequately explain his rejection of Tomaszewski's testimony? I would like to say no reasonable adjudicator. That's what I've been hearing. But I realize that it still is the ALJ's role to be the fact finder and to say yea or nay when they weigh opinions. But there's no contrary evidence here. So he's left with a medical opinion that is explained that has been consistent throughout the reports and in the deposition. So I do go to that far side of the camp saying no reasonable adjudicator here presented with this record could reach a different conclusion. What if the adjudicator discounted the testimony? You're saying the government had the burden of having some contrary medical evidence that's not in this record? There is no contrary evidence to counter my rebuttal evidence with Dr. Tomaszewski. I bet you should have went on the equivalent summary judgment in this case. And the confusion in this case seems that it's over clinical and legal pneumoconiosis. But it doesn't have to be that confusing to me because legal pneumoconiosis is still defined as a chronic dust disease of the lungs. And this expert explains in the two diseases I found there's no chronic dust that would have incited either of those diseases to be present in the lungs. So the agency just didn't do their job in looking at this record. And in essence agreeing with me that the presumption of legal pneumoconiosis was rebutted in this case. Or is it an argument that the agency is wrong in creating this link that shouldn't exist? If the agency posits that there is a presumptive nexus between any impairment of lung function and 15 years or more of employment in a coal mine, then we presume that there is this nexus. And as I understand what you're saying, Dr. Tomaszewski says, is, well, I rebutted it, this presumption, because I concluded that there was no deposition of these particles in the lungs. And so that impairment of lung function couldn't have been related to the employment in a coal mine for 15 years. But that's precisely the presumption. And so it seems to me that you have to have some alternative explanation. It was a genetic, he had this, he had no deposition of particles. And so this impairment of lung function, this chronic bronchiolitis, must have been some genetic, there was a genetic marker or he smoked for 30 years and that there were these alternative causes. But to say that there was no rebuttable, that I rebutted the presumption, seems to be, in effect, that there should have been no presumption in the first place. So remember, there's two ways to rebut the presumption. I can rebut it by showing there's no disease. Right. Or you can rebut by showing disability was not due to. I'm trying to rebut by showing no disease. Right, disease causation. Correct. And in this case, there's no legal pneumoconiosis because none of the abnormalities were related to coal dust exposure from a causal standpoint. And he did explain why he thought it might be idiopathic or unknown, but there were other reasons that he explained that he attributed the bronchiolitis or the interstitial fibrosis to. I'll save a minute for rebuttal. I'll give you some rebuttal first. Thank you. Good morning, Your Honors. May it please the Court. I'm Brad Austin. I'm here today representing the respondent who is now Sandra Schlipp. And, of course, Sandra Schlipp is the daughter of the original coal miner in this case, Mr. James Lyle, who filed this claim in 2011 and pursued it up until he unfortunately passed away in 2018. After his passing, his widow, Joanne, pursued the claim for two years until she passed away. And so now Sandra is pursuing the claim. Your Honors, I think, especially Judge Timkovich, when you asked Mr. Mattingly, I want to cut straight to the chase. When you asked him, could a reasonable fact finder have found Dr. Tomaszewski's report did not rebut the presumption? And he said, of course, I don't think so. That runs afoul of what this Court did when it remanded this case. If that were the case, that a reasonable fact finder could not have possibly found that Dr. Tomaszewski did not rebut the presumption, this Court could have reversed the first time around. But the true issue here is that a fact finder the first time around, with Judge Romero's opinion, did not consider all of the evidence. And this Court got it right in its published opinion. Judge Bacharach and Judge Timkovich, you were on that opinion, and you explained quite clearly that there was a mandate on remand. You have to consider all of the evidence, and you can't simply say the doctor didn't explain himself, because the doctor did explain himself. But there's a big difference between a physician who explains himself and a judge discrediting on that sole reason, and a physician who explains himself and the judge not crediting it. On remand, the case was reassigned to Judge Schwenk. Judge Schwenk engaged in a two-page, single-spaced analysis where he summarized Dr. Tomaszewski's opinions. He went in and explained himself and provided various reasons for why he didn't find Dr. Tomaszewski's opinion persuasive. That's what fact finders do. That's a battle of the experts. That's a weighing of the medical evidence. Now, in this case, there wasn't necessarily a battle of the experts because we didn't have an opinion that is contrary to Dr. Tomaszewski's, but my client was entitled to the 15-year presumption. It's a presumed fact until proven otherwise that he suffered from both clinical, legal, and disability causation. Now, the employer did rebut clinical co-workers pneumoconiosis, but what it failed to do was rebut legal co-workers pneumoconiosis, and Judge Schwenk outlined various reasons that are supported by substantial evidence for doing so. At the end of the day, that's what this case is. It is a substantial evidence case. Judge Schwenk explained himself. There is evidence to support that, and it's really that clear. Now, when this case was before this court the last time around, there were all kinds of issues. The case has been significantly narrowed since that time. This is the only issue we have. So when you look at these reasons that the fact finder gave, unlike the first ALJ, Judge Schwenk fully considered the deposition transcript of Dr. Tomaszewski, and I agree with Mr. Mattingly. Dr. Tomaszewski does explain himself most completely in that deposition, but you need to understand Mr. Mattingly was not the only attorney who got a chance to ask questions of Dr. Tomaszewski in that deposition. I asked some questions as well in cross-examination, and I'd like for the court to go in and review the entirety of the deposition transcript. Well, we have. Are there any particular parts of the deposition that show this differentiation between the clinical and legal? Well, Your Honor, I think he did acknowledge on cross-examination that there was minimal dust deposition within the lung tissue. He acknowledged that there was emphysematous changes, although he didn't believe that they were the type of emphysematous changes that were caused by coal mine dust exposure. He did acknowledge in the deposition that he had a significant and substantial coal mine dust history that in a susceptible host might cause disabling co-workers pneumoconiosis. And at the end of the day, Your Honor, there are other reasons besides, you know, just the clinical. The judge did factor in the failure to cite medical literature, and I wanted to talk about that for a moment. It's a bold declaration to just simply declare that another disease process besides coal mine dust exposure and legal co-workers pneumoconiosis caused. Why do we care about that or the second rationale? Now, Mr. Mattingly said we can, I guess, have our choice of who to review, but it could be and, or. But who do you think we review? The BIA, which, you know, ordinarily in immigration cases, I think that's what we do. But now in bankruptcy cases, we review the bankruptcy judge's decision. What do we do in a pneumoconiosis case? Do we review the board's decision or the ALJ's? I think you review both. I think you review the board's decision. In this particular case, I don't think that necessarily matters because I think the sole reason that the board did state would be affirmed. But for the sake of answering your question, because I don't want to sidestep it, I think you still are entitled to review the full opinion of the administrative law judge based on substantial evidence. That's mine.  So, as I was stating, there's various reasons. Number one, Judge Schlenk did review the deposition transcript. That's what the previous ALJ did not do. Number two, Judge Schlenk fully understood Dr. Tomaszewski's opinion, and that's evidenced by him outlining the opinion in his decision. Two-page summarization. Mr. Mattingly is not arguing that he improperly outlined the opinion. So, of course, the judge fully understood it. That's something the previous ALJ did not. He was unconvinced by the ideology of constrictor bronchiolitis and interstitial fibrosis because of the failure to cite medical literature. Not only that. I'm sorry? Not only that, but on page 14, because that's not something that's caught, this is a quote, is it something that is caused by exposure to coal mine dust? Answer, no, it is not. So, it's not only the failure to cite medical literature, it's his independent conclusion as a doctor that chronic bronchiolitis is not attributable to exposure to coal mine dust in his medical opinion. Now, why would that be an independent basis to rebut the regulatory presumption of a nexus to cause disease causation? So, let me make sure I understand. Your question is, why would that statement from this medical expert in this case not be an independent? Why wouldn't that contradict what the ALJ said? That it's not a completion of clinical and legal. He's actually giving a medical opinion about why chronic bronchiolitis does not arise out of coal mine employment. Proving that chronic bronchiolitis does not arise out of coal mine employment does not necessarily eliminate, even if accepted, the possibility of legal coal workers pneumoconiosis as an additive contribution to that process. And I think that's what the ALJ felt when he reviewed the report, was that he had not completely excluded the legal pneumoconiosis that was presumed in this case as a factor in the ultimate decision. What's that? I mean, the question is, is it something that's caused by exposure to coal mine dust? The question was, is that the sole cause? Is exposure to coal mine dust the sole cause? Is it something that's caused? Is it your interpretation of that exchange that when the question is, is it something that's caused, that that's one of the partial causes? Is that how you read that question? What he's saying in that portion of the deposition is that in his experience, and based on what he understands in the medical literature, I guess, that it's his opinion that that particular condition is not caused by occupational exposure to coal mine dust. It's not that he didn't say that. It's that the judge didn't accept that as fully explained within the context of this record. So that's kind of what you had the first time around, was that the judge kind of just summarily said, I don't think the doctor explained himself. It's clear the doctor did explain himself, but the judge was not convinced by that. And that's what fact finders do. He looked at the regulatory definition of legal coal workers' pneumoconiosis, looked at the Federal Registrar that talked about how coal mine dust can arise out of various, many different ways, many different types of disease processes, and their sequelaes can be legal coal workers' pneumoconiosis. And that bald declaration alone was not sufficient to convince the ALJ that he had rebutted legal. I want to ask you, and I don't want this to sound like I'm arguing with you, because I'm not. I'm really trying to probe this, because I'm not a doctor. I never pretended to be a doctor. But it seems to me that the ALJ did not reject Dr. Tomaszewski's opinion based on a lack of credibility. I mean, there were some references to he didn't cite medical literature. But the third rationale seems to be not a rejection of his credibility or persuasiveness, but that he committed a legal error by conflating clinical and legal pneumoconiosis. And this passage suggests to me that, well, maybe he wasn't conflating the two. He was giving an independent reason that even though he doesn't have coal miners' pneumoconiosis clinical, that it doesn't arise, that chronic bronchiolitis doesn't arise out of coal mine employment, because that's just otherwise you would see these particles in the lung tissue. Your Honor, I mean— Am I wrong about that? I could be. I mean, I disagree, but I understand your point. I think Judge Swank clearly explained in his medical opinion that he finds that diagnosis, that you have to have macule or nodularity in order to diagnose legal co-workers' pneumoconiosis. I mean, he has to apply his own rules within the agency. And 65, you know, Fed Reg 79941 and 20 CFR 718-201A2 clearly state that you don't need that in order to make a diagnosis of legal co-workers' pneumoconiosis. And I think, you know, given the fact that Klayman enjoyed this presumption, it was on the employer to fully convince the ALJ that that was not the case. And so when you have an opinion that he interpreted to be at odds with what the regulations say, I think it's a reasonable position for the fact finder to not be convinced by that argument. Now, perhaps another ALJ may have looked at that exact same evidence and weighed that differently, but I think that's a factual determination for the trier of fact. And I think the judge fully explained himself. He certainly tried his best and got out of his way to explain exactly what he was finding. I think he did show respect to this court by outlining everything that this court found, outlining everything that came from the board, and he went in and tried to provide many separate reasons for what he did. You know, we don't impose a duty of long-windedness on an ALJ. We don't impose perfection on an ALJ. I think the standard is can you figure out what the judge did and why he did it, and could a reasonable mind have reached the same conclusion? In this case, I do think a reasonable mind could have reached the same conclusion, and this court should affirm the decision from the ALJ on remand, as well as the decision from the Benefits Review Board. Does the court have any additional questions? Hearing none, thank you. Thank you. And Mr. Mattingly, I ask for rebuttal. Could you give him two minutes, please? Two points I'd like to make on rebuttal. Judge, there's a presumption of disability due to pneumoconiosis. It's not a presumption that any lung disease a coal miner has was caused by coal mine dust. So to rebut that presumption, you can show that there's not clinical or legal pneumoconiosis. Everyone agrees here there's no clinical. Then the question becomes, are these other changes those of legal pneumoconiosis? Dr. Tomaszewski in his report and in that passage of the deposition, which is the page before the passage that was cited in this court's decision, I think explains very precisely these are other diseases. These are not related to coal dust exposure. And contrary to what Mr. Austin said, Judge Swank never addressed that page of the deposition and never acknowledged that Dr. Tomaszewski in his reports and in the deposition explained that simply those diseases were unrelated to coal dust exposure. They're not known to be caused by coal dust exposure and there wasn't any significant coal mine dust associated with them to allow him to conclude that there was some type of nexus from a medical causation standpoint. So I guess back to Judge Tempkowicz, a reasonable fact finder can't reach another decision in this case. Dr. Tomaszewski's opinion is fully reasoned. It deserves full credibility. It rebuts the presumption of legal pneumoconiosis. Can I ask a question about how that applies, that standard applies in this case? Typically, you know, when we consider substantial evidence, there's a finding, the defendant robbed the bank, whatever, that there was enough evidence to support it. Here, the third rationale of Judge Swank is that there was a conflation of clinical and legal. On substantial evidence, is the question as applied in this context whether a reasonable judge could interpret Dr. Tomaszewski's deposition testimony as a conflation of clinical and legal pneumoconiosis? Is that how that substantial evidence applies in this particular context? I think that's the first question you have to ask. Could his opinion conflate the two? And I don't see how. And the second question is, is there substantial evidence in the record that supports rebuttal, and is there anything contrary to that? And in this case, the only evidence is Dr. Tomaszewski. It rebuts the presumption of legal pneumoconiosis. So it's a two-pronged question.  Thank you. Your time has expired. We appreciate the arguments. Counsel is excused, and the case shall be submitted.